JCM, LLC

v.

**TOWN OF CUMBERLAND ZONING BOARD OF REVIEW et al.**[1]

No. 2004–328–Appeal.

Supreme Court of Rhode Island.

Dec. 27, 2005.

---

**1.** We are cognizant of our holding in *Town of Coventry Zoning Board of Review v. Omni Development Corp.,* 814 A.2d 889, 896–97 (R.I. 2003), that a zoning board of review does not have standing to appeal to this Court from an adverse decision of the State Housing Appeals Board (SHAB). We identify the Town of Cumberland Zoning Board of Review (board) in the caption simply to clarify the procedural posture of this case.

Katherine McNamara Feodoroff, Esq., for Plaintiff.

Richard E. Kirby, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The Town of Cumberland, by and through its finance director, Thomas M. Bruce, III (town or Cumberland) appeals an adverse decision of the State Housing Appeals Board (SHAB) remanding for further evidentiary hearings the denial of a comprehensive permit application from JCM, LLC by the Town of Cumberland Zoning Board of Review (board). This case came before the Supreme Court for oral argument on November 8, 2005, pur-

suant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. We affirm SHAB's decision.

## I

## Facts and Travel

In early June 2003, the town set out to amend the housing element of its comprehensive community plan in a commendable attempt to align itself with the General Assembly's goal of increasing statewide availability of low and moderate income housing pursuant to the Low and Moderate Income Housing Act (housing act), G.L.1956 chapter 53 of title 45. *See* § 45-53-2. On June 4, 2003, the town council took the first step by passing ordinance No. 03-27, expressly adopting an amended housing element pursuant to the Rhode Island Comprehensive Planning and Land Use and Regulation Act.[2] State approval of the amended housing element as an affordable housing plan was conditionally granted on October 6, 2003, and the contingency—incorporating a map into the plan and remitting the same to the state—was formally acknowledged by the state as satisfied on November 17, 2003.

A mere sixteen days after the town passed its ordinance, JCM—a private, for-profit, limited liability company—filed an application for a comprehensive permit pursuant to § 45-53-4, as amended by P.L.2002, ch. 416, § 1. JCM proposed to construct fifty single-family residential dwellings on approximately sixty acres of vacant land in Cumberland. To qualify for the abbreviated application procedure offered under the housing act, *see id.*, JCM vowed to set aside 20 percent of the dwellings in its proposed development for qualified low or moderate income persons. Following a brief period during which the completeness of JCM's petition was in question, the town ultimately deemed September 8, 2003, the official filing date of JCM's application.

On December 2, 2003, the board held a hearing on JCM's application pursuant to § 45-53-4.[3] The board allowed JCM's

---

**2.** General Laws 1956 § 45-22.2-8(c) provides:

"A comprehensive plan is adopted, for the purpose of conforming municipal land use decisions and for the purpose [of] being transmitted to the director for state review, when it has been enacted by the legislative body of the municipality pursuant to the manner provided for [in] the adoption of ordinances in the municipality's legislative or home rule charter. All ordinances dealing with the adoption of or amendment to a municipal comprehensive plan shall contain language stating that the comprehensive plan ordinance or amendment shall not become effective for the purposes of guiding state agency actions until it is approved by the state of Rhode Island pursuant to the methods stated in this chapter, or pursuant to any rules and regulations adopted pursuant to this chapter. The comprehensive plan of a municipality shall not take effect for purposes of guiding state agency actions until approved by the director, comprehensive plan appeals board, or the Rhode Island supreme court."

**3.** Upon the filing of an application for a comprehensive permit, G.L.1956 § 45-53-4, as amended by P.L.2002, ch. 416, § 1, required, in pertinent part, the following:

"The zoning board of review * * * shall, *within thirty (30) days of the receipt of the application, hold a public hearing on the application.* The chair of the state housing appeals board shall, by regulation, provide for review by planning boards in cases of applications involving land development projects or subdivisions." (Emphasis added.)

JCM waived the thirty-day public hearing requirement.

counsel to proceed with an outline of the comprehensive permit proposal after appearing to have followed the recommendation of the assistant town solicitor to hold in abeyance the issue of the application's completeness. After his brief presentation, the board heard from Katia Balassiano (Balassiano), director of planning and community development, who stated that JCM's application was inconsistent with the town's approved affordable housing plan. Based on Balassiano's presentation and the advice of the assistant town solicitor, the board, upon motion, unanimously voted to deny JCM's application because it was inconsistent with the town's approved affordable housing plan. The board followed its decision with a brief written opinion, holding as follows:

"1. The [Application] is pursuant to R.I.G.L. § 45–53–1 et seq.

"2. That pursuant to R.I.G.L. § 45–53–4 the Town of Cumberland has a plan in place to meet the statutory requirement of 10% of its housing stock dedicated to low and moderate income housing.

"3. That the [Application] as presented is inconsistent with said plan.

"4. That the Town of Cumberland, pursuant to R.I.G.L. § 45–53–4 is not subject to the jurisdiction of the Act."

Pursuant to § 45–53–5, JCM filed a timely notice of appeal to SHAB on December 22, 2003. On January 30, 2004, Reject Any Fast Tracking (RAFT), a group of interested abutters, intervened pursuant to SHAB Rule 8.04.[4] SHAB held oral argument on September 14, 2004, and issued a written decision on October 12, 2004, remanding the case to the board for further evidentiary hearings as to whether JCM's application was consistent with local needs. SHAB, relying on the housing act

and this Court's holding in *Town of Coventry Zoning Board of Review v. Omni Development Corp.*, 814 A.2d 889, 898–99 (R.I.2003), concluded that a zoning board was only privileged to summarily deny a comprehensive permit application if a town already had met the 10 percent statutory quota for low and moderate income housing. The town timely appealed SHAB's decision to this Court.

## II

## Analysis

### A

### Applicable Law

■ In July 2004, the last of several significant amendments to the housing act proposed that year became effective upon passage by the General Assembly. Despite the fact that SHAB heard oral argument in the present matter on September 14, 2004—over two months after the last of the amendments became effective—neither party contests SHAB's application of the *pre-amendment* housing act. Nevertheless, it is necessary to first pass on the propriety of SHAB's use of the superceded statute.

■ A statute will not be interpreted as retroactive unless there is a clear expression of such an application by the Legislature. *Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367, 371 (R.I.1994). Recently, in *Kaveny v. Town of Cumberland Zoning Board of Review*, 875 A.2d 1 (R.I. 2005), this Court had occasion to consider the retroactive effect of these very amendments to the housing act. We held that the housing act amendments were inapplicable to our decision in that case because they were enacted *after* the filing of a

4. The members of Reject Any Fast Tracking (RAFT) are: Julia E. Miller, Robert R. Ramella, Jeanne C. Ramella, David P. Lewinski, Sandra L. Lewinski, Michael T. Menard, Sarah L. Menard, Peter J. Jezard and Sharon M. Jezard.

timely notice of appeal to this Court, and the language "upon passage" manifested a clear legislative indication that the amendments *not* apply retroactively. *Id.* at 4–5.

We recognize that *Kaveny* involved an appeal directly to this Court from a decision of the Town of Cumberland Zoning Board of Review. *Id.* at 4. We discern no reason, though, why the logic of *Kaveny* should not apply with equal force to an appeal to SHAB. In the instant case, all 2004 amendments to the housing act were made in the interim between JCM's filing a timely notice of appeal with SHAB on December 22, 2003, and the oral argument before SHAB on September 14, 2004. Therefore, based upon our holding in *Kaveny* and "our general rule on retroactivity," *id.* at 5, SHAB's review was appropriately controlled by the pre-amendment housing act.

## B

### Standard of Review

■ This Court's standard of review of a SHAB decision is "analogous to that applied by the Superior Court in considering appeals from local zoning boards of review pursuant to G.L.1956 § 45–24–69 * * *." *Omni Development Corp.*, 814 A.2d at 898 (quoting *Curran v. Church Community Housing Corp.*, 672 A.2d 453, 454 (R.I.1996)). "A SHAB decision may be reversed by this Court if it violates constitutional or statutory provisions, was made in excess of statutory authority or upon error of law, or was otherwise clearly erroneous in view of the evidence or was otherwise arbitrary or capricious." *Id.*

## C

### The Pre–Amendment Housing Act and SHAB

"[I]n an effort to promote increased housing opportunities for people with low and moderate incomes," the housing act allows both nonprofit and for-profit developers to eschew cumbersome development application requirements and opt instead "for a streamlined and expedited application procedure[.]" *Kaveny*, 875 A.2d at 5 (quoting *Omni Development Corp.*, 814 A.2d at 894). For private developers, qualification for this truncated procedure is contingent upon the proposed housing in an application "remain[ing] as low or moderate income housing for a period of not less than thirty (30) years from initial occupancy." *Id.* (citing § 45–53–4).

Following notice to all affected local boards and a public hearing on a comprehensive permit application, the zoning board of review must render a decision on the application. Section 45–53–4, as amended by P.L.2002, ch. 416, § 1. The statute provides that the zoning board may deny such an application for the following reasons:

"if the proposal is inconsistent with local needs, including, but not limited to, the needs identified in an approved comprehensive plan, and local zoning ordinances and procedures promulgated in conformance with the comprehensive plan; if the proposal is not in conformance with the comprehensive plan; if the community has met or has plans to meet the standard of ten percent (10%) of the units * * *; or if concerns for the environment and the health and safety of current residents have not been adequately addressed." *Id.*

■ The denial of a comprehensive permit application may be appealed to SHAB. Section 45–53–5, as amended by P.L.1991, ch. 154, § 1. "In hearing the appeal, [SHAB] shall determine whether * * * the decision of the zoning board of review was reasonable and consistent with local needs * * *." Section 45–53–6(a), as amended

by P.L.1991, ch. 154, § 1; *see also Omni Development Corp.*, 814 A.2d at 898 ("In order for SHAB to overturn or modify a decision of a zoning board that denied an application, it must determine whether the denial was reasonable and consistent with local needs."). A "reasonable" ordinance in this context is one "not designed or intended to exclude low and moderate income residents from the community or to discourage or frustrate the likelihood of success of a project." *Omni Development Corp.*, 814 A.2d at 899.

■ Whether a zoning or land use requirement or regulation is "consistent with local needs," however, essentially depends upon whether the town currently meets the "statutory quota for low and moderate income housing units." *Id.* A zoning or land use ordinance is conclusively deemed consistent with local needs when "imposed by a city or town council after a 'comprehensive hearing,' *and* that community has met or exceeded its statutory minimum for low and moderate income housing units; *and* has adopted a comprehensive plan that includes a housing element that addresses the need for low and moderate income housing for that community." *Id.* at 898–99 (emphasis added).[5] SHAB has no authority to vacate the decision of a local zoning board in such a community. *Id.* at 899.

In communities that have *not* met the statutory quota—such as the Town of Cumberland in the present matter[6]—*Omni* points SHAB to the statutory definition of "consistent with local needs" for guidance, *id.* at 899–900:

" 'Consistent with local needs' means * * * reasonable in view of the state need for low and moderate income housing, considered with the number of low income persons in the city or town affected and the need to protect the health and safety of the occupants of the proposed housing or of the residence [*sic*] of the city or town, to promote better site and building design in relation to the surroundings, or to preserve open spaces, and if the local zoning or land use ordinances, requirements, and regulations are applied as equally as possible to both subsidized and unsubsidized housing." Section 45–53–3(b), as amended by P.L.1998, ch. 58, § 1.

Finally, SHAB must look to the following factors when evaluating a denial in a community that has not yet achieved the statutory quota for low and moderate income housing:

"(b) The standards for reviewing the appeal include, but are not limited to:

"(1) the consistency of the decision to deny or condition the permit with the approved comprehensive plan;

---

**5.** This conclusion is derived from the language of § 45–53–3(b)(1–2), as amended by P.L.1998, ch. 58, § 1, which reads, in pertinent part:

" * * * Local zoning and land use ordinances, requirements, or regulations *shall* be consistent with local needs when imposed by a city or town council after comprehensive hearing in a city or town where:

"(1) Low or moderate income housing exists which is * * * in excess of ten percent (10%) of the housing units reported in said census.

"(2) The city or town has promulgated zoning or land use ordinances, require-

ments, and regulations to implement a comprehensive plan which has been adopted and approved * * *, and the housing element of the comprehensive plan provides for low and moderate income housing in excess of * * * ten percent (10%) of the housing units * * * as provided in paragraph (1) of this subdivision." (Emphasis added.)

**6.** The town concedes that at no time during the pendency of this matter, nor at the time of this appeal, did Cumberland meet or exceed the 10 percent statutory low and moderate income housing standard articulated in § 45–53–4.

"(2) The extent to which the community meets or plans to meet the ten percent (10%) standard for existing low and moderate income housing units;

"(3) The consideration of the health and safety of existing residents;

"(4) The consideration of environmental protection; and

"(5) The extent to which the community applies local zoning ordinances and special exception procedures evenly on subsidized and unsubsidized housing applications alike." *Omni Development Corp.*, 814 A.2d at 901 (quoting § 45–53–6(b)).

## D

### The Purview of the Housing Act

■ In its written decision, the board found "[t]hat the Town of Cumberland, pursuant to R.I.G.L. § 45–53–4 is not subject to the jurisdiction of the [housing act]." Indeed, on appeal to this Court the town advances the same: Because Cumberland properly had adopted an amended comprehensive plan that included a housing element that endeavored to attain the statutory low and moderate income housing quota of 10 percent, the board's decision was not susceptible to SHAB's "consistent with local needs" review since the board was privileged to deny JCM's application on the basis that the town had "plans to meet the standard of ten percent (10%) of the units * * *[.]" Section 45–53–4, as amended by P.L.2002, ch. 416, § 1. Therefore, the town maintains, the proper adoption of a comprehensive plan with a housing element that strives to attain the 10 percent low and moderate income housing quota places a town within a "safe harbor" wherein it has no obligation to meaningfully entertain a comprehensive permit application it summarily deems inconsistent with its comprehensive plan.

At the outset we note that the board's conclusion—whether factual or legal—that its comprehensive plan removed the town from the "jurisdiction" of the housing act is unfortunate. A review of the housing act reveals no language to suggest that any town in the state could evade the housing act's purview by simply adopting a comprehensive plan that boasts a housing element generous to the plight of low and moderate income persons. Section 45–53–4 simply lists a qualifying plan as a basis for denial of a comprehensive permit application, to be cogently articulated in a written decision after a public hearing.

Perhaps more troubling is that the town's interpretation of § 45–53–4 is directly at odds with our holding in *Omni*. It bears repeating that *Omni* designates as conclusively consistent with local needs *only* those decisions of zoning boards based upon ordinances "imposed by a city or town council after a 'comprehensive hearing,' *and* that community has met or exceeded its statutory minimum for low and moderate income housing units; *and* has adopted a comprehensive plan that includes a housing element that addresses the need for low and moderate income housing for that community." *Omni Development Corp.*, 814 A.2d at 898–99 (emphasis added). The fact that the town has adopted its comprehensive plan satisfies only one criterion to qualify for a conclusive presumption of consistency with local needs. Pursuant to *Omni*, the board's decision was still subject to SHAB's "consistent with local needs" analysis because Cumberland did not and, to date, has not met the 10 percent low or moderate income housing quota.

Furthermore, the town's proposed construction of the housing act suggests that the General Assembly in fact intended SHAB to have *less* authority than *Omni*

contemplates by expressly limiting the matters to which SHAB is capable of giving meaningful review. For support, it points to § 45-53-4: because the statute merely requires a local zoning board to "review" a comprehensive permit request, and then deny said application "if the community has met *or has plans to meet* the standard of ten percent (10%) of the units[,]" § 45-53-4, as amended by P.L. 2002, ch. 416, § 1 (emphasis added), then in those communities with *plans* to meet the 10 percent statutory low and moderate income housing quota, the town argues, zoning boards simply must make a passing comparison between an application and an approved comprehensive plan to determine their conformity with one another. The town continues that since it has an approved affordable housing plan in place, it has "plans" to meet the 10 percent low and moderate income housing quota, and the board's obligation was simply a cursory "review" of the JCM proposal.

■ The town's construction implies that a local zoning board's duty to produce a detailed factual record ceases—or, at the very least, is drastically lessened—when a town locally has adopted some plan to eventually feature 10 percent of its housing as low or moderate income units. The town admits as much when it characterizes a zoning board's "review" of a comprehensive permit application as "a type of confirming survey or inspection of the proposed petition." Certainly such a construction runs counter to the express language of the housing act and effectively strips SHAB of its authority to meaningfully review permit denials. As stated above, § 45-53-6(b) and *Omni* establish that SHAB has the authority to examine a zoning board's decision for consistency with local needs. Of course, a competent decision replete with factual findings is a prerequisite to SHAB's giving meaningful review to any decision of a zoning board.[7]

In a recent commentary on the pitfalls of a stingy administrative record, we noted that our "deferential standard of review * * * is contingent upon sufficient findings of fact by the zoning board." *Kaveny*, 875 A.2d at 8.[8] "[A] municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken." *Id.* (quoting *Sciacca v. Caruso*, 769 A.2d 578, 585 (R.I.2001)).

■ A satisfactory factual record is not an empty requirement. Detailed and informed findings of fact are a precondition to meaningful administrative or judicial review. *Id.; Bernuth v. Zoning Board of Review of New Shoreham*, 770 A.2d 396, 401 (R.I.2001). Furthermore, factual findings cannot be merely "conclusional, and the application of the legal principles must be something more than

---

**7.** Citing *Richards v. Zoning Board of Review of Providence*, 100 R.I. 212, 219–20, 213 A.2d 814, 818 (1965), RAFT argues that, should this Court find the board's factual pronouncements wanting, we should nevertheless refuse to " 'subject[ ] the parties to such delay and inconvenience [when] * * * able to satisfy ourselves from the record that the board's decision was either correct or erroneous regardless of their failure to give the reasons for their decision.' " In the same breath, RAFT concedes that this Court may reverse the board's decision if "the record is completely bereft of competent evidentiary support." In addition, inapposite to RAFT's contrary implication, this Court " 'will not search the record for supportive evidence' " of the board's laconic decision. *See Kaveny v. Town of Cumberland Zoning Board of Review*, 875 A.2d 1, 8 (R.I.2005).

**8.** While *Kaveny*, 875 A.2d at 8, was appealed directly to this Court from a decision of the zoning board by a team of affected abutters, the principles annunciated therein are equally applicable to quasi-judicial appellate bodies such as SHAB.

the recital of a litany." *Kaveny,* 875 A.2d at 8 (quoting *Bernuth,* 770 A.2d at 401). In the absence of sufficient findings of fact and conclusions of law, "the [C]ourt will not search the record for supportive evidence or decide for itself what is proper in the circumstances." *Id.*

Recent amendments to the housing act support the conclusion that a zoning board's duty to produce a competent factual record is without exception. Section 45–53–4(a)(4)(v)(A–G), as amended by P.L. 2004, ch. 286, § 11 and P.L.2004, ch. 324, § 11, requires that a zoning board of review, upon application for a comprehensive permit, make "positive findings, supported by legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted," on a list of seven provisions, including whether a proposed development is consistent with local needs, is in compliance with town ordinances and regulations, is environmentally sound, and safeguards the health and safety of current and future residents of the community. The only plausible justification for including this language in the amended statute is to ensure that, on appeal, SHAB has *something* to meaningfully review.

As SHAB noted in its order, the board's findings are nothing more than conclusions of law, entirely unsupported by competent findings of fact. This can hardly be the administrative record envisaged by the General Assembly when enacting the housing act.

■ In light of the foregoing discussion, we hold that SHAB was well within its statutory authority to remand JCM's appeal to the board for further findings of fact. The board's first order of business on remand must be to determine whether JCM's comprehensive permit application was substantially complete as of February 13, 2004, using the criteria set forth in § 45–53–6(f)(1)(i)(A–J). *See* § 45–53–6(f)(1–2). If the board determines that JCM's application was not substantially complete as of February 13, 2004, the board may deny JCM's application, and JCM may resubmit or amend its petition pursuant to the requirements of amended § 45–53–4. If the board finds JCM's application substantially complete as of February 13, 2004, it must undertake its review pursuant to the housing act in effect on February 13, 2004, prior to the 2004 amendments. *See* § 45–53–6(f)(2).

## Conclusion

We affirm the decision of SHAB and remand the case to the Town of Cumberland Zoning Board of Review for further proceedings consistent with this opinion. The board should take care that its conclusions of law are properly supported by findings of fact based upon substantial evidence.