DECISION
Robert S. Jensen (Jensen or Appellant) brings this appeal from a decision of the Zoning Board of Review of the Town of Bristol ("the Board"), denying his application for a zoning variance. Jensen seeks a variance from the side, front, and rear set-backs required by the Town of Bristol Zoning Ordinance ("Zoning Ordinance") for construction of a new home. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, this Court reverses and remands this matter to the Board for further consideration and decision. The Board is directed on remand to consider the evidence without regard to the proposed height of the structure so long as that height does not exceed the maximum allowable height and to issue a decision that is supported by requisite findings of fact.
 Facts and Travel
Appellant owns an undeveloped parcel of land ("the Lot"), known as Assessor's Plat 133, Lot 75, on Wilcox Street in the Town of Bristol. (Zoning Board Decision 1.) The lot is zoned residential R-15 and consists of approximately 2,925 square feet. (Id.; see also Appellees' Ex. A.) A minimum lot area of 15,000 square feet is required to build a single-family home in an R-15 *Page 2 
zone. (Bristol Town Code Ch. 28 § 28-111.) The Town Code also requires that new homes in an R-15 zone be built with minimum front and rear set-backs of 35 feet and side set-backs of 20 feet. (Id.)
It would be impossible for Appellant to construct a building on his lot in compliance with these requirements. The lot is only 65 feet deep, five feet less than the amount needed for front and rear set backs totaling 35 feet each. (See Site Plan.) The lot has 45 feet of frontage, five feet more than the amount needed for the side set backs. (Id.) Obviously, Appellant cannot build a structure that is merely five feet wide.
On July 14, 2005, Appellant filed an application with the Board, seeking dimensional variances from the set-back requirements of the Zoning Ordinance to allow building a residence on the Lot with a front set-back of 17.35 feet, a rear set-back of 17.5 feet, and set-backs of 12.5 feet on each side. (Appellant's Ex. A.)[1]
At the hearing held on the application, Appellant presented expert testimony and an expert report from George Valentine, a certified real estate appraiser. (Decision 3; see also Tr. of Sept. 12, 2005 9-12.) Mr. Valentine opined that Jensen met all the statutory requirements for a dimensional variance. He stated that the hardship was more than a mere inconvenience, as it would deprive Appellant of all beneficial use of the Property. (Ex. C, 14.) Specifically, Mr. Valentine noted that the unique character of the Lot created a qualifying hardship. (Tr. 11.) He testified that the hardship did not result from Appellant's prior conduct, that the proposed variance would not alter the general character of the surrounding area or impair the intent of the Zoning Ordinance or the Comprehensive Plan, and that Appellant was seeking the least relief necessary. (Tr. 11-12.) *Page 3 
Mr. Valentine acknowledged that although the footprint of the house was similar to others in the neighborhood, the three-floor house would be of a greater height than that of neighboring houses, which have no greater than two stories. (Tr. 15.) He explained that environmental regulations applicable to new construction required that the house be built higher than the surrounding homes that predated those regulations. (Tr. 16.)
Abutting property owners also spoke at the hearing, all in opposition to the application. Each expressed similar concerns that a lot of less than 3,000 square feet was too small for building a home, that Appellant's proposed home would alter the character of the neighborhood, that the height would be particularly inconsistent with neighboring structures, and that it would create a problem with traffic and parking congestion. (Tr. 20-32.)
At the conclusion of the hearing, the Board voted unanimously to deny the application. The Board based its decision on two findings. First, the Board found that the "granting of relief would alter the general characteristic of the surrounding area and impair the intent or purpose of the Zoning Ordinance of the Town of Bristol." (Decision 1.) "Specifically, the proposed dwelling would be entirely out of character with the surrounding neighborhood due to its relative size and height." (Id.) In moving to deny the application, Board Vice Chairman William McMullen stated "there is no house in the area more than two stories, or probably no more than 25' in height . . . I'll make that estimate." (Tr. 44.) (Ellipses in original.)
The Board's second finding is that "[t]he variance granted [sic] by the Board is not the least relief from the provisions of the Zoning Ordinance necessary to remove the aforementioned hardship." (Decision 1.) "Specifically, the applicant has proposed a dwelling at the maximum size that could be placed on the lot. It appears that a smaller dwelling, compatible with other *Page 4 
dwellings in the neighborhood, could be constructed on the lot." (Id.) Addressing the need to comply with environmental regulations, Mr. McMullen stated:
 We estimated that by FEMA regulations the first floor of this house would have to be at least 6' above the high tide, allowing 8' for a garage under the house, that would leave the applicant 27' to work with before he reaches the 35' limit. . . . [H]e could put a house consistent with the other houses in the neighborhood on top of that 8' foundation at 25' high. (Tr. 44.)
Mr. Jensen seeks reversal of the Board's Decision. Notice was properly provided pursuant to § 45-25-69.1. This Court subsequently granted a Motion to Intervene by Maria and Anthony S. Mello ("Intervenors"). The Mellos own a home at 20 Wilcox Street, directly behind Appellant's Lot, and Mr. Mello was among the neighbors speaking at the hearing. (Tr. 23.) Although their lot has no frontage on the street, the Mellos hold an easement to pass over Appellant's Lot for street access, and Mr. Mello expressed concern that the proposed building would interfere with the easement. (Id.) In response to a question from the Board, Mr. Mello also stated that his lot and Mr. Jensen's lot were at one time joined, under the prior ownership of the Belmores. (Tr. 24.) He also stated that he was unsuccessful in attempting to purchase the subject parcel when he purchased his own lot, but testified that he then inquired of someone at Town Hall and was told the lot could not be sold and that no house would be allowed to be built on it. (Id.)[2]
The Intervenors argue that the Board's findings and decision should be affirmed. (Intervenors' Brief 1.) Furthermore, they argue that the Board failed to consider that the Lot is "an arguably illeagal [sic] subdivision," which would deny the Board the ability to grant any relief. (Id.) In support of this latter contention, they seek to present evidence regarding the *Page 5 
history of Mr. Jensen's lot, the Zoning Ordinance then in effect, and Town records regarding the parcel. (Id. 2-3.)
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69 (d), which provides:
 The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"[T]he Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v.Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Restivo at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The Court cannot substitute its judgment for that of the zoning board but must uphold a decision that is supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. ofReview, 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but *Page 6 
less than a preponderance." Lischio v. Zoning Bd. of Review of the Townof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
 Intervenors Seek To Offer Additional Evidence
At the hearing, the Intervenors contended that the subject parcel is an undersized lot which was unlawfully subdivided. However, they did not offer any documentary evidence in support of that issue. They now seek to have the Court consider additional evidence which they suggest impacts on the Board's statutory authority to grant Mr. Jensen's requested relief. To prove their claim that the Lot was unlawfully subdivided, the Intervenors offer a 1959 deed transferring the parcel from Edward J. and Florence Belmore to Clifford Belmore, a copy of the 1931 Bristol Zoning Ordinance,[3] and field cards relating to the Lot which were subsequently prepared by Town appraisers. The Intervenors argue that the Lot was undersized when created because it was too small to permit construction of a home in any of the residential districts authorized by the 1931 Zoning Ordinance. They further contend that subsequent to its creation, the parcel continued to be treated by the City as unbuildable. They conclude that since it was not lawfully established, it cannot be developed at this time. (Intervenors' Brief 2-3.)
Under G.L. § 45-24-69(c), this Court may allow any party to an appeal to present new evidence deemed necessary for a proper disposition of the matter. Nonetheless, new evidence should not be taken as a matter of course, but only when the "record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal. . . ." Tarasovic v. Zoning Com. of Trumbull, 147 Conn. 65, 69, 157 A.2d 103,105 (1959) (interpreting Connecticut statute worded similarly to §45-24-69(c)). If new evidence is taken, it will not *Page 7 
result in a trial de novo. Edward H. Ziegler, Jr., Rathkopf's The Law ofZoning and Planning, § 62:46 at 62-120 (2006). Rather, "[t]he additional testimony is only used to clarify or supplement the record before the board; the court's determination must still be whether, on the basis of that record as so supplemented or clarified, the board's determination was arbitrary." (Id.) Additional testimony, when taken, usually involves a question of legal right. (Id. at 62-119.)
In this case, even if the Court accepts the proffered evidence as true, it would not constitute sufficient proof of the fact the Intervenors seek to establish: that the parcel is not buildable. The applicable Zoning Ordinance provides that "[a]ny . . . parcel of land . . . that was not lawfully existing or established at the time of the adoption or amendment of this Zoning Ordinance, is not protected by the Article." (Zoning Ordinance § 601.) "A lot was lawfully existing or lawfully established if it was of record or shown on a recorded plat prior to June 28, 1961 and was separately owned." (Id.) Accordingly, the determinative issue is whether the parcel was lawfully existing or established at the time of the adoption or amendment of the Zoning Ordinance. The Intervenors' proffer does not address this issue.
It is clear that the Lot is the only one along Wilcox Street that, as the result of subdivision, does not run from the street to the Kickemut River. (Tr. 33; see also Consulting Report 9 and Plat Map.)[4] Mr. Mello also stated that both his lot and Appellant's lot were previously joined. (Tr. 24.) The Board considered the lot as lawfully non-conforming. At the hearing, Counsel to the Board, Attorney Ryan, advised the Board that this Lot "appears to be a 3,000 square foot [sic] lot, which is lawfully non-conforming." (Tr. 32-33.) In its Brief *Page 8 
opposing this appeal, the Board acknowledges that the Lot is "considered by the Board to be a lawful non-conforming lot. . . ." (Mem. of Appellees/Defendants 1.)
Appellant's eligibility to obtain a variance depends on whether the Lot was lawfully established. The Intervenors' proffer does not sufficiently challenge the finding of the Board on this issue. It is clear that the Lot presently appears on the tax rolls as a separate parcel, Plat # 133, Lot # 75. (Decision 1.) The Intervenors do not proffer evidence suggesting that the parcel was not a separate lot as of July 28, 1961. Absent evidence that the parcel was not lawfully existing or established on July 28, 1961, the Lot is buildable. The evidence proffered by the Intervenors fails to raise a valid issue as to whether the Lot is presently buildable and as such, this Court will decline to consider the additional evidence offered by the Intervenors.
 The Board's Decision
Section 1008.3(A) of the Zoning Ordinance, which mirrors G.L. §45-24-41, provides the criteria for a variance. Section 1008.3(A) provides:
 In granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and not due to a physical or economic disability of the applicant;
 (2) that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) that the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this Zoning Ordinance or the Comprehensive Plan of the Town.
 (4) that the relief to be granted is the least relief necessary.
 (5) The Board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that: . . .
 (b) . . . the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The *Page 9 
fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief.
Appellant argues that the Board's decision must be reversed because of the Board's consideration of the height of the proposed building, rather than the set-back requirements from which relief was sought. Mr. Jensen's application to the Board did not request relief from the height limit, as his proposed structure was within the 35 feet maximum allowed by the Town Code. The Court notes that the Board's finding that the surrounding houses are all shorter, having only one or two floors, is supported by the expert testimony of Mr. Valentine, the appraiser. As Mr. Valentine explained, the surrounding homes predate current FEMA regulations, which now require "design[ing] a house a little differently, which means to go up." (Tr. 16.)
Despite the testimony of the appraiser and the fact that the proposed structure meets the permissible height, the record indicates that the Board denied relief, at least in part, because the height, in and of itself, would exceed that of neighboring homes. In moving to deny the application, Vice Chairman McMullen stated that, "[t]he relief that is requested is not the least relief necessary, because the applicant could put a house compatible to the houses in that neighborhood, keeping the height no more than 28 feet." (Tr. 45.) Considerations of the height of Appellant's proposed home also mark the Board's finding that the characteristic of the neighborhood would be altered.
Appellant expressed a willingness to accept a conditional variance requiring an architect's certification that the maximum allowable height was not exceeded. (Tr. 8.) Several of the objecting neighbors, however, testified that the building as proposed was too high and would be out of the neighborhood character. The Board agreed with the neighbors and found that the proposed structure would not maintain the characteristic of the neighborhood, as required *Page 10 
to obtain a variance. "Specifically, the proposed dwelling would be entirely out of character with the surrounding neighborhood due to its relative size and height." (Decision 1.) (Emphasis added.)
The Board is empowered to "authorize upon application, in specific cases of hardship, variances in the application of the terms of [the Zoning] Ordinance." Zoning Ordinances § 1007.5(C). The Rhode Island Supreme Court has stated that a Zoning Board created to administer an ordinance may not "formulate or revise it." Abbott v. Zoning Board ofReview of Warwick, 78 R.I. 84, 88,79 A.2d 620, 623 (1951). This Court notes that the Bristol Town Council, in 2003, relaxed the height limit in R-15 residential zones, raising the 30-foot limit to the current 35-foot level. (Town of Bristol Adopted Ordinance No. 2003-04.)
Denying an application for a variance from set-back requirements based on the height of a proposed building, which height has been previously ruled permissible for a residential structure, is more akin to revision than administration. The record in this case indicates that height was an important concern, possibly the primary concern, of the Board members in voting to deny the application. If the Board is able to deny an application based on such considerations, it would effectively be able to revise the Town Code. Furthermore, the Board's finding that Appellant was not seeking the least relief necessary appears inconsistent. An applicant seeking the "least relief necessary" from set-back requirements might well propose building to the maximum allowable height. To the extent that the Board relied on the proposed height in finding that Appellant did not seek the least relief necessary, such finding would have been arbitrary and capricious.
It is unclear from the decision whether the Board based its findings that the Appellant did not seek the least relief necessary and that his proposed construction would alter the general *Page 11 
characteristic of the surrounding area on grounds other than height. In addition to appealing the Board's consideration of the height of the proposed building, Appellant argues that the Board reached conclusional findings not properly supported by the record. Specifically, Appellant argues that expert testimony in support of his application was improperly overlooked without explanation and without countervailing evidence. (Appellant's Brief 8.) He further argues that the Board failed to make adequate findings to support its conclusions. (Id. 12.)
The Court notes that it cannot adequately review a board's decision unless it includes sufficient findings of fact and application of legal principles to explain the board's view of the evidence and application of the ordinance. A zoning board's decision must be based on findings of fact and application of legal principles sufficient to allow a reviewing court to understand the board's view of the evidence and application of the ordinance. Cullen v. Town Council the Town of Lincoln, 850 A.2d 900,904 (R.I. 2004) (citing Thorpe v. Zoning Board of Review of NorthKingstown, 492 A.2d 1236, 1237 (R.I. 1985)). Where the record from a zoning board is not sufficient to allow review, "the case should be remanded to the board with directions to make findings of fact and conclusions of law based on the required evidence." Ridgewood HomeownersAss'n v. Mignacca, 813 A.2d 965, 977 (R.I. 2003) (citing Cranston PrintWorks Co. v. City of Cranston, 684 A.2d 689, 691-92 (R.I. 1996)); G.L. § 45-24-69(d). "Furthermore, factual findings cannot be merely `conclusional, and the application of the legal principles must be something more than the recital of a litany.'" JCM, LLC v. Town ofCumberland Zoning Board of Review, 889 A.2d 169, 176-77 (R.I. 2005) (quoting Kaveny v. Town of Cumberland Zoning Board of Review,875 A.2d 1, 8 (R.I. 2005)). While a zoning board may reject an expert's opinion in favor of contrary evidence, it cannot disregard expert testimony that is the *Page 12 
only evidence on an issue without providing a basis for such rejection.Carter Corp. v. Zoning Board of Review of Lincoln, 98 R.I. 270, 274,201 A.2d 153, 155 (1964).
Mr. Valentine offered the only expert testimony on the issue of whether the application met the statutory requirement that a petition for a variance seek the least relief necessary. He characterized the proposed house as "the minimum that could really sustain a single-family residence on the footprint." (Tr. 12.) The Board found, however, that Appellant was not seeking the least relief necessary, but rather, "a dwelling at the maximum size that could be placed on the lot." (Decision, 1.) Despite specific advice from the Town Solicitor to "look at what is a reasonably sized house for that neighborhood . . . size of bedrooms, size of bathrooms, size of living rooms, dining rooms," the Board provided conclusions rather than facts when addressing this issue in its decision. (Tr. 33.) The decision merely states: "[i]t appears that a smaller dwelling, compatible with other dwellings in the neighborhood, could be constructed on the lot." (Decision 1.) Absent facts to support such a finding, the decision is conclusional and does not allow meaningful judicial review. On remand, the Board should consider and address specific factors, such as those articulated by Attorney Ryan, in order to support its conclusions regarding the "least relief necessary" issue with adequate findings of fact.
 Conclusion
After review of the entire record in this matter, the Court determines that if the Board's findings — that Appellant was not seeking the least relief necessary and that his proposed home would alter the character of the surrounding area — were based on the height of the proposed building, such findings were arbitrary and capricious. The decision of the Board is not supported by requisite findings of fact and is therefore in violation of statutory provisions. Accordingly, the matter is remanded to the Board for findings of fact regarding its decision that the Appellant *Page 13 
did not seek the least relief necessary and that the proposed building would alter the character of the area or for reconsideration of the evidence in accordance with this decision. The Board is directed to consider the question without regard to the height of the proposed building so long as that height is within the maximum allowable height of a principal structure in the applicable zone.
Counsel shall submit the appropriate order for entry.
[1] The maximum allowable height of the principal structure in an R-15 Zone is 35 feet. Town Code Ch. 28 § 28-111. The proposed building would have a height of 30 feet, which complies with the height restrictions of the Ordinance.
[2] The Court recognizes that this statement contains rank hearsay. Mr. Mello never identified the person at Town Hall who provided him with this information. Certainly, the Board was justified in disregarding the hearsay.
[3] The 1931 Ordinance remained in effect in 1959. Some revisions were made to the Zoning Ordinance in 1961, and again in 1971, when the Bristol Town Council undertook the first revision and codification of the general ordinances since 1917. See Preface to 1972 Bristol Town Code (superceded).
[4] Page 33 of the transcript quotes Attorney Ryan as stating, "on Wilcox Street, at least the map I'm looking at, it is the only lot in that stretch of the block that was never [sic] subdivided; from looking at the map. All the other lots have the depth from the street to the Kickemuit River." In light of the Plat Map and in the context of the second quoted sentence, it appears he misspoke or a transcription error occurred; his meaning was that the Lot is the only one ever subdivided.