DECISION
David MacBain, Mary Elizabeth MacBain, Thomas Whittendon, and Judy Whittendon (collectively, the Appellants) appeal a decision of the Rhode Island Coastal Resources Management Council (the CRMC), granting variances to Michael Antonellis and Maureen Antonellis (collectively, the Applicants). The Administrative Procedures Act G.L. 1956 §42-35-15(g) gives this Court jurisdiction to consider appeals from administrative agencies, such as CRMC.
 I Facts and Travel
The Applicants own property on Prospect Lane, in Portsmouth Rhode Island, and otherwise known as Lot No. 30-A on Tax Assessor's Plat 40 in the Land Evidence Records for the Town of Portsmouth. See CRMCEngineering Report, dated December 5, 2005. Currently, an uninhabited (and uninhabitable) three-room cottage dwelling sits on the approximately 11,800 *Page 2 
square-foot property. Id The building was constructed in 1930.Hearing Transcript, dated September 19, 2006, at 78.
The existing cottage, which abuts the Sakonnet River, is located approximately fifty-five feet from the most inland coastal feature (coastal headland bluff and freshwater wetlands). Id, andDecision at 1. On July 6, 2005, the Applicants filed an application with the CRMC, seeking to raze and remove the cottage and to replace it with a new, two bedroom residential dwelling to be serviced by a new individual sewage disposal system (ISDS) and municipal water.Decision at 1.
CRMC Regulations require a fifty-foot buffer zone and seventy-five foot setback for new residential development. See CRMP §§ 140 and 150;CRMC Engineering Report. The Applicants seek a forty-eight foot setback variance and an eighteen-foot buffer zone variance from the CRMC.See CRMC Engineering Report.
After filing their initial application, the Applicants submitted various documents in support of their petition. The Applicants revised their application several times before the final application was submitted. See Staff Report, dated November 14, 2005, at 1.
The documents that the Applicants submitted include a report from Northeast Engineers and Consultants, Inc. (Exhibit 5, at 45-50 and 72-87); an application to the Department of Environmental Management (DEM) to construct an ISDS using an "Advantex with bottomless sand filter" leachfield (id. at 35-41); and letters from the Town of Portsmouth. Id at 42-44. One of the letters confirms ownership of the property and another verifies the existence of a curb stop from the town's water supply. Id at 42-43. A third letter provides assurance from the Town's Building Official that the Applicants will be receiving a building permit once they demonstrate that their project conforms with the State Building Code. Id at 44. Other materials offered by *Page 3 
Applicants includes a letter from the Rhode Island Historical Reservation and Heritage Commission, stating that the project will "have no effect on any significant cultural resources (those listed on or eligible for listing on the National Register of Historic Places)" (id at 53-54); a letter from Natural Resources Services, Inc., outlining the results of its wetlands edge delineation. Id at 56-63. They also submitted a letter from Attorney Vernon L. Gorton, Jr. (Attorney Gorton), evaluating a twenty foot drainage/passage easement along the southerly edge of the Applicants' property. (Exhibit 7 at 111-113.)
On September 26, 2005, the Appellants submitted a letter detailing their objections to the proposed project. (Exhibit 9 at 132-138.) In that letter, the Appellants question whether the proposal might adversely impact the environment. Id at 132-34 and 136-38. They also allege that the hardship was self-created because the Applicants knowingly "purchased this property with all current CRMP regulations in place." Id at 134. The Appellants further contend that "the proposed construction actually touches the northerly border of [an] easement . . . [and that] installation of a silt fence/barrier would completely obstruct the right of way." Id The Appellants submitted several exhibits in support of their objections, including photographs and diagrams of the property, several deeds evidencing an easement, and a decision from the Portsmouth Zoning Board of Review stating that the Building Official's opinion "was preliminary and non-binding, [was] not based on a substantially complete application for development and vested no rights in the property owners." Id at 139-162.
The hearing on the application was held on September 19, 2006. Based upon the record, it appears that the Applicants rested on the documentary evidence they submitted along with their application. When the hearing began, CRMC Vice Chairman Paul E. Lamont stated: "[l]ets hear from the objectors because everybody here has read the case and we're familiar with it." *Page 4 Hearing Transcript (Tr.) at 70. Counsel for the Appellants expressed their concerns. These concerns were namely that the structure on the property never constituted a dwelling, never contained plumbing (Tr. at 86), was not a lot of record on August 3, 1959 (Id at 87), and that Applicants created their own hardship when they failed to consummate the purchase of another property for which they had signed a purchase and sale agreement (Id at 74-76). Counsel for the Applicants responded by stating that the town classifies the structure as a two-bedroom residential camp for tax purposes (Id at 77 and Exhibit5 at 51), that it was built in 1930 (Tr. at 78), and that previous owners may have discharged their sewage directly into the Sakonnet River (Id at 85).
No witnesses testified at the hearing, and none of the Appellants objected to the manner in which the hearing was conducted. Furthermore, the Appellants neither asked to offer testimony in support of their objections, nor requested the opportunity to cross examine the Applicants. At the conclusion of the hearing, the CRMC voted unanimously to approve the application based upon the documentary evidence submitted by the applicants.
On November 27, 2006, the CRMC issued a written Decision. The Appellants took a timely appeal from that Decision claiming that the CRMC failed to support its decision with adequate findings of fact. In particular, they assert that there was nothing in the record to support the CRMC's finding that the need for the variance was not due to the prior actions of the applicants or their predecessors in interest.
 II Standard of Review
The Administrative Procedures Act provides this Court with appellate review jurisdiction over DLT orders. Sec. 42-35-15(g). It provides: *Page 5 
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Id
When reviewing a decision under the Administrative Procedures Act, this Court may not substitute its judgment for that of the agency on questions of fact. Johnston Ambulatory Surgical Ass'n, Inc. v.Nolan, 755 A.2d 799, 805 (R.I. 2000). "The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Barrington Sch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992). Furthermore, "[ljegally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Rhode Island Pub. Telecommunications Auth. v. RhodeIsland State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994).
An agency's decision "can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307,1309 (R.I. 1988). Furthermore, reviewing Courts should uphold the decision as long as the agency acted within its authority to make such decisions. Goncalves v. NMU Pension Trust, 818 A.2d 678, 683 (R.I. 2003) (citing Doyle v. Paul Revere Life Ins. Co., *Page 6 144 F.3d 181, 184 (1st Cir. 1998)); see also,Coleman v. Metropolitan Life Ins. Co., 919 F.Supp. 573, 580 (D.R.I. 1996).
 III Analysis
The crux of the Appellants' appeal is their allegation that the CRMC failed to make adequate findings of fact in violation of § 42-35-12. Section 42-35-12 provides in pertinent part:
 "Any final order adverse to a party in a contested case shall be in writing or stated in the record. Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."
When acting in a quasi-judicial capacity, an administrative board "must set forth in its decision findings of fact and reasons for the actions taken." JCM, LLC v. Town of Cumberland Zoning Bd. of Review,889 A.2d 169, 176 (R.I. 2005) (quoting Kaveny v. Cumberland Zoning Board ofReview, 875 A.2d 1, 4-5 (R.I. 2005)); see also Block Island Power Co. v.Public Utilities Com'n, 505 A.2d 652, 654 (R.I. 1986) ("If the commission, however, fails to provide sufficient findings and evidence upon which it has based its decision, [the court] shall not speculate thereon or search the record for supporting evidence or reasons, nor shall [it] decide what is proven.")
It is well settled that "[a] satisfactory factual record is not an empty requirement. Detailed and informed findings of fact are a precondition to meaningful administrative or judicial review." JCM,LLC, 889 A.2d at 176. Moreover, "factual findings cannot be merely `conclusional, and the application of the legal principles must be something more than the recital of a litany.'" Id at 176-77 (quotingKaveny, 875 A.2d at 8). In situations where there is an "absence of sufficient findings of fact and conclusions of law, `the [C]ourt will not search the record for supportive evidence or decide for itself what is proper in the circumstances.'" Id *Page 7 
Pursuant to Section 110.4A of the CRMC Regulations, if a proposed activity is "found to pose little impact or threat to coastal resources" it may "not warrant full CRMC staff review." That section further provides:
 "activities are often associated with existing residential . . . sites, or previously assented structures or activities and include, but are not limited to, interior renovations, construction of attached decks, dormers, porches, second story additions, roofing, siding or window and door alterations, installation of attached tool sheds, flagpoles, fences along property bounds located landward of the coastal feature and certain types of landscaping work." Id
In the instant matter, it appears that the sole reason why the CRMC conducted a full review was as a result of Appellants' objections.
Before the CRMC may grant a variance, an applicant must meet the following requirements:
 "(1) The proposed alteration conforms with applicable goals and policies in Parts Two and Three of the [CRMP].
 (2) The proposed alteration will not result in significant adverse environmental impacts or use conflicts, including but not limited to, taking into account cumulative impacts.
 (3) Due to conditions at the site in question, the applicable standard cannot be met.
 (4) The modification requested by the applicant is the minimum variance to the applicable standard necessary to allow a reasonable alteration or use of the site.
 (5) The requested variance to the applicable standard is not due to any prior action of the applicant or the applicant's predecessors in title
 (6) Due to the conditions of the site in question, the standard will cause the applicant an undue hardship. . . ." CRMP § 120. A.
The Appellants maintain that the Applicants failed to satisfy the requirement contained in CRMP § 120.A(5) and that the CRMC erred in finding that "[t]he requested variance to the applicable standard is not due to any prior action of the applicant or the applicant's predecessors in title[.]" Decision at 3. Essentially, the Appellants are alleging that the Applicants failed to *Page 8 
demonstrate that the hardship from which they are suffering was not self-created or created by a predecessor in interest. See Sciacca v.Caruso, 769 A.2d 578, 584 (R.I. 2001) (discussing a similar provision in the context of zoning and stating that "[t]he label [of self-created hardship] seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality") (quoting 7 Patrick J. Rohan, Zoning and Land UseControls § 43.02[6] at 43-66 (1998)).
In its Decision, the CRMC found that "[notwithstanding the arguments of an abutting property owner, the CRMC finds that the existing structure qualifies as a pre-existing dwelling and that the proposed project will re-establish the use of the deteriorated structure and land to residential use. . . ." Id at 2. The CRMC further found that "[t]here was no substantive testimony or evidence to contradict the findings of the CRMC staff and the submissions by the applicant." Id
Among the Applicants' submissions was a letter from Attorney Gorton. He states in the letter that he had conducted a title search of the property. His title search revealed that an individual named Isaac Macomber "created the Antonellis lot by a subdivision plan recorded in 1959." Letter from Attorney Gorton, dated August 2, 2006, at 1. The CRMC, however, was not created until 1971. See P.L. 1971, ch. 279. Accordingly, although a predecessor in interest created what is now a substandard lot, at the time the lot was created, it was not in violation of CRMC statutory or regulatory provisions. Consequently, the CRMC did not err in finding that the hardship was "not due to any prior action of the applicant or the applicant's predecessors in title."Decision at 3.
Furthermore, the record reveals that the Appellants failed to sustain their burden of proof. See Smith Development Corp. v. Bilow Enterprises,Inc., 112 R.I. 203, 206, 308 A.2d 477, 479 *Page 9 
(1973) (upholding the dismissal of a complaint where the abutters failed to prove an adverse impact.) Pursuant to Section 110.3 of the CRMC Regulations:
"Substantive objections are defined by one or more of the following:
 (1) Threat of direct loss of property of the objector(s) at the site in question;
 (2) Direct evidence that the proposed alteration or activity does not meet all of the policies, prerequisites, and standards contained in the applicable sections of this document;
 (3) Evidence is presented which demonstrates that the proposed activity or alteration has a potential for significant adverse impacts. . . .
 (4) Evidence that the proposed activity or alteration does not conform to state or duly adopted municipal development plans, ordinances, or regulations." CRMP § 110.3.
Although the Appellants objected to the proposed project, the CRMC found that such objections were not substantive. See Statement of Counsel forthe Applicants, Tr. at 70 ("I think it is clear that the only reason we're here is because we have an objector, otherwise this application was approvable administratively.").
A review of the Appellants' letter of objection reveals that many of their objections were vague and unsubstantiated. For instance, they asserted that there is an underground stream that drains directly into the path of the proposed septic system; however, they produced no evidence to support this assertion. (Exhibit 9 at 132.) They further maintained that installation of a septic system "will be a definite contribution to environmental deterioration[,]" and that "[although the system is seemingly reliable, a failure would result in a gross environmental impact to abutting properties and to the shoreline of the Sakonnet River." Id at 133-34. The Appellants also questioned whether the property was a valid substandard lot of record; however, as the CRMC observed: "ultimately, it's not our role to determine that. That's a zoning board issue." Tr at 88. Although the Appellants objections were numerous, they offered little, if any, evidence in *Page 10 
support of their broad allegations. Consequently, they failed to sustain their burden of proving that the project would have an adverse impact.
 IV Conclusion
After carefully reviewing the record, this Court finds that the Decision granting the application was not in violation of statutory and regulatory provisions and was not in excess of the authority granted to the CRMC. Additionally, the Decision was neither affected by error of law nor was it characterized by an abuse of discretion. Substantial rights of the Appellants have not been prejudiced. Accordingly, this Court denies the appeal.
Counsel shall submit an appropriate order consistent with this Decision. *Page 1