JAMES T. ABBOTT *et al. vs.* THE ZONING BOARD OF REVIEW
OF THE CITY OF WARWICK.

MARCH 16, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is a petition for certiorari to review

the action of the respondent board in granting the application of Leo T. Martineau for an exception under the provisions of the zoning ordinance of the city of Warwick to permit the use of land in a residential zoning district as a "Drive-In Theater." The writ was issued and pursuant thereto the respondent certified to this court the records pertaining to the decision, including a summary of the representations made to the board for and against the application.

It appears that about one month prior to the date of application, November 30, 1949, Leo T. Martineau, a resident of Providence, hereinafter sometimes called the applicant, purchased 12.75 acres of vacant land in a residential B zone in the city of Warwick. A drive-in or open-air theater is not a permitted use in that zone. In the newspaper notice of the hearing thereon before the board the land was described as lot 472, plat 350 "at intersection of Warwick Ave. & Oakland Beach Ave. * * *" both of which are main highways. We note here that in said notice the plat was not definitely identified, although it later appeared that such reference was to an assessor's plat. It is conceded by the board that the land was not located at the above-mentioned intersection although it was in that immediate vicinity. A statement of the actual site and of the tributary streets and roads involved is unnecessary for our purposes.

A hearing on the application was held on December 14, 1949. The applicant at that time told the board that he intended to sell the land to Gerald Deitch and Joseph Petrella, who were to build and operate the theater. Counsel for the prospective buyers then presented a plan of the theater, explained the details of the venture which he said would call for an expenditure of approximately $125,000, and urged the granting of the application. Such action was approved in a written statement signed by six persons owning land within 200 feet of the alleged location and by

three others in person, while one property owner who lived some distance from the site voiced his opposition.

At the close of the hearing the board granted the application giving the following reasons for their decision: "1. The City of Warwick needs the additional revenue that it would derive from the taxes. 2. Young couples, who have one or two children, can attend the theater without the additional expense of hiring baby sitters. 3. Chief of Police stated that his department can control the traffic without it being a hazard. 4. The citizens and taxpayers of the City of Warwick are entitled to recreation of this sort." The decision further provided: "1. That the stipulations in the letter from the Chief of Police dated Dec. 13, 1949 be carried out" and "2. That fire protection, either a fireman or fire-box, be provided for." As a matter of fact the stipulations, so called, were merely suggestions by the chief of police of necessary changes for the maintenance of order and the control of increased traffic, including the resurfacing of two certain streets.

Shortly after such decision by the board other property owners and residents of the neighborhood whose interests would be affected by the erection and operation of the theater retained counsel. They thereupon immediately filed a petition, bearing some fifty signatures, asking for a rehearing by the board, alleging in substance that the petitioners were not present at the hearing "to protest the application" because some did not see the advertisement in the newspaper "while others who were cognizant of the application were misled by the advertisement * * *." Among the grounds of objection stated in this petition were increased fire and traffic hazards, devaluation of property, disturbance at late hours, and the creation of unsanitary conditions. Furthermore on January 11, 1950 two clergymen, one of whom spoke for himself and for an association of ministers, also wrote to the board for a review of the matter. However, after stating in an undated written decision that the application had been duly adver-

tised and fully considered, the board denied the petition for a rehearing on the ground that its rules of procedure did not permit the granting of "any rehearings" within one year from the date of decision.

The petitioners here claim that in the circumstances the decision of the board is illegal, arbitrary and unreasonable. Respondent first contends that the petitioners are not really aggrieved parties entitled to have a review of the decision in question by certiorari, as after proper notice they had failed to present their objections to the board. It further urges that two of the petitioners, who owned property within 200 feet of the alleged site, "apparently have had a change of mind and have withdrawn their names as petitioners"; that another owner of a lot within that area, who was illiterate and had signed the petition by mark, should have supported her action in the matter by affidavit showing "that the petition was read to her or that she understood its contents"; and that the other petitioner owned property well beyond the aforementioned area. We observe at this point that we find no record of a "change of mind" by the two petitioners as above alleged, nor is there any provision by statute or otherwise requiring that a signature by mark, especially if it is duly witnessed as it was in the present petition, be supported by affidavit as respondent argues. In the absence of proof to the contrary, we will not presume that the petitioner so signing was improperly induced to sign the petition.

We understand respondent's contention in effect to be that only an owner of property within 200 feet of land for which a variance or exception is sought can be an aggrieved party within the terms of the enabling act or ordinance. This same question was considered by us in *Flynn v. Zoning Board of Review*, 77 R. I. 118, and we there held that generally speaking a landowner whose property naturally would be affected adversely by a decision granting an exception or variance was considered to be an aggrieved party having a right to a review of the board's decision in

this court by certiorari. As the reasons and pertinent authorities for such holding are set forth in that case we need not repeat them here. In the instant case all the petitioners not only own property in the same established residential zone, but the nature and extent of the proposed change is also such that it would naturally and reasonably tend to affect the value and use of the property in that neighborhood generally. The contention under consideration is therefore without merit.

Respondent, quoting certain language from *Taft* v. *Zoning Board of Review*, 76 R. I. 443, next contends that the petitioners are not entitled to question the hereinbefore-mentioned misdescription of the land in question as they waived that right by failing to make such objection to the board. Since it is admitted that the location of the premises is substantially incorrect, it cannot be said that persons in interest, whether within or outside the 200-foot limits of the alleged site, might not reasonably have been misled to inaction at the hearing before the board. As to the quotation from the *Taft* case, it is only necessary to observe no useful purpose is served by relying on language in a case which is so clearly different in its facts from the one at bar.

This is not the ordinary case for relief from the provisions of a zoning ordinance. The large amount of land involved, its location in a residential zone near the confluence of heavily traveled highways, and the character of the proposed use of that land present an unusual situation for careful consideration by the proper authority. The board urges, among other things of a similar nature, that the decision should be sustained because (1) that section of the city of Warwick has "not developed into a residential area as zoned" in 1945; (2) "The area is improperly zoned"; (3) "It is clear that this land wasn't suitable for residential B. and the board in granting the application is encouraging the most appropriate use of the land"; and (4) "It is com-

mon knowledge that 'Y' intersections are excellent locations for business."

In the absence of any legislative power in the board to establish zones, the reasons just mentioned are without persuasive force. That power is vested exclusively in the city council by the enabling act, general laws 1938, chapter 342. The board was created to administer the zoning ordinance but not to formulate or revise it. The discretionary power of the board to grant an exception in special cases was intended to provide reasonable latitude in the application of the terms of the ordinance in order to relieve against the arbitrary effects that might follow from a literal enforcement thereof. *Flynn* v. *Zoning Board of Review, supra.* The case of *East Providence Mills, Inc.* v. *Zoning Board of Review,* 51 R. I. 428, upon which respondent relies, is inapplicable in the circumstances of the instant case. Our discussion of that case in the *Flynn* case need not be repeated here.

It is to be kept in mind that in the case at bar we are dealing with an exception and not with a variance. See *Harrison* v. *Zoning Board of Review,* 74 R. I. 135, for a statement of the difference between the two grounds of relief. The ordinance now before us authorizes the board in appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance in certain specified cases or "where the exception is reasonably necessary for the convenience and welfare of the public." Since the application was not for a permitted and specified use in a residential B district, the decision of the board must necessarily rest on the quoted part of the ordinance.

Recognizing that the power of the board to grant an exception is broad and might be abused, in *Costantino* v. *Zoning Board of Review,* 74 R. I. 316, at page 324, the court stated that such power should be sparingly used, meaning thereby that a decision granting an exception would be reversed as an abuse of discretion in the exercise

90

of the legal power delegated to the board unless such decision was based upon some substantial ground, as in *East Providence Mills, Inc.* v. *Zoning Board of Review, supra.* The nature and extent of the proposed use in the instant case present an extreme departure from the permitted uses in the district.

After due consideration we are of the opinion that the board was not warranted in granting an exception that would permit the applicant to introduce a new business of such size and character in a residential zone. The grounds set forth by the board in its decision relate almost entirely to the policy in zoning heretofore adopted by the city of Warwick, which policy, as hereinbefore stated, is for the city council and not for the board to determine. Therefore, excluding all questions of that nature, there is nothing in the present record which in our judgment shows that the granted exception was reasonably necessary for the convenience and welfare of the public.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the records in the case which have been certified to this court are ordered sent back to the respondent board.