DECISION
This matter is before the Court on the appeal of James O. O'Neill, [1] Sandra A. Borsa, and Karen A. Tremblay ("Appellants") from a decision of the Town of South Kingstown Zoning Board of Review ("Zoning Board" or "Board"). The Board's decision of March 30, 2007 granted the application of South County Sand and Gravel Company ("SCSG") for a special use permit to create a manufactured home park and golf course to be known as South County Country Club ("SCCC"). Appellants filed this timely appeal to this Court on April 19, 2007. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Appellee SCSG owns real property located at 841 Gravelly Hill Road, in the Town of South Kingstown, Rhode Island ("Town"), designated as Tax Assessor's Plat 65, Lots 2, 3, 4, 5, 8, and 13 and Plat 72-2, Lot 20. Seeking to develop that property into a housing park for the elderly, SCSG applied for a special use permit in 1998 to construct an age-restricted mobile or manufactured home park and golf course on the approximately 260 acre tract. At the time of the *Page 2 
application, the property was zoned R-40A which, under South Kingstown Zoning Ordinance ("Ordinance") Article 1 § 100, was to be used for "areas includ[ing] low-density residential uses, residential tourist facilities and selected non-residential, public and semi public facilities."
The initial application for SCCC sought to allow 443 detached manufactured home units on sites that would be leased from SCCC along with various accessory uses including a golf course and club house. Unlike subdivisions or land development projects that would normally go through a phased development process before the Planning Board, at the time of the application, the Ordinance provided for mobile and manufactured home parks to be created by special use permit. Applications were to be ". . . made directly to the Zoning Board. . . ." (Ordinance § 920.) To aid the Zoning Board in its determination, Ordinance § 333 also required the Planning Board to undertake an advisory development plan review.
In order to avoid wasting hundreds of thousands of dollars in both private and public funds that would have been spent designing, evaluating, and re-designing the full sets of plans required by Ordinance Article 9, [2] SCCC and the Zoning Board agreed that the Board would evaluate the special use permit application by undertaking a three step process. First, the Zoning Board would determine an acceptable number of home sites. The Zoning Board would make this determination based on the impact of proposed units on traffic and drainage patterns, neighborhood characteristics, and environmental conditions. Next, SCCC would fully engineer a development plan based on the approved number of units and submit that plan to the Planning Board for the advisory development plan review. Then, once the Planning Board rendered its recommendation, the Zoning Board would render a final decision on the application for a special use permit.
Based on this procedural regiment, the Zoning Board held a series of duly advertised *Page 3 
public hearings throughout the late spring and summer of 1998, and on March 23, 1999, the Zoning Board issued a decision ("1999 Decision") approving further development of a plan for 285 home sites. The 1999 Decision included a number of conditions that had to be fulfilled before a building permit could issue, the most important of which incorporated the development plan review requirement:
 7. Pursuant to the Applicant's own election, this proposed development shall still be subject to Development Plan Review by the South Kingstown Planning Board. The final layout plan for the mobile home park, at the reduced number of units, shall be submitted to the South Kingstown Planning Board for its review for determination of the final layout plan and location of the individual units on the site to be submitted to the Zoning Board. (1999 Decision at 5.)
Having received approval to develop a plan for only 285 of its envisaged 443 home sites and not wanting to waive any arguable appellate rights it may have had to challenge the unit determination, SCSG filed an appeal with the Washington County Superior Court. However, rather than pursue the appeal, SCSG notified the town that it would agree to the 285-unit limit and set to work in a cooperative process developing the detailed plans required under Article 9 of the zoning ordinance.[3]
During this development process more than a dozen meetings took place between SCSG and officials from the Town's Planning Department and Technical Review Committee. In spring 2006, the Plans had finally been developed enough that the Planning Board could hold public hearings in order to finalize its advisory review. In an extensive advisory opinion issued November 15, 2006, the Planning Board found that ". . . the plans for this project comply with all the requirements of the Zoning Ordinance and these regulations" and that "the plans for this project are consistent with the Comprehensive Plan. . . ." (Planning Board Advisory Decision at 1.) *Page 4 
In addition, the Planning Board specifically noted that "approval is subject to the applicant receiving final approval of a Special Use Permit from the South Kingstown Zoning Board of Review." Id. at 2.
With development plan review completed, the Zoning Board re-advertised the initial application for a special use permit so that it could hold hearings to finalize its review of the application. Duly noticed hearings were held on January 5, 2007 and January 17, 2007, with deliberations continuing into the February 28, 2007 meeting. On March 28, 2007 the Zoning Board issued its written decision, dated March 23, 2007, granting SCSG a special use permit to build SCCC. This appeal followed.
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision only "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id. *Page 5 
Judicial review of administrative action, including zoning decisions, is "essentially an appellate proceeding." Notre Dame Cemetery v. RhodeIsland State Labor Relations Board, 118 R.I. 336, 339, 373 A.2d 1194,1196 (1977); See also Mauricio v. Zoning Board of Review of the City ofPawtucket, 590 A.2d 879, 880 (R.I. 1991). Appellate courts review questions of statutory interpretation de novo. Tanner v. TownCouncil, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Restivo v. Lynch,707 A.2d 663, 665 (R.I. 1998) (quoting Lett v. Caromile, 510 A.2d 958, 960
(R.I. 1986)). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). "Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'" Lischio v. Zoning Bd. of Review of the Townof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)). In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825
(1978)).
 III Analysis
Appellants raise three issues on appeal. Appellants first assert that the statutorily mandated notice of the original Zoning Board hearing in 1999, the Planning Board hearings in *Page 6 
2006, and the final approval Zoning Board hearing in 2007 describe the property differently such that notice was ineffective and failed to satisfy the statutory requirements for public notice in planning and zoning board actions. Next, Appellants argue that the site plan for SCCC as approved violates the residential density requirements established by the Town of South Kingstown subdivision regulations. As such, Appellants argue that SCCC was only permitted to use "land suitable for development" in completing its density calculations, and could not have included wetlands and feeder roads. Finally, Appellants contend that the Zoning Board's March 23, 2007 decision granting final approval for a special use permit is void because approval for the requested special use permit was first granted in 1999. Accordingly, Appellants argue that the one year period to obtain a building permit provided for under the Town of South Kingstown Zoning Ordinance expired in 2000 and that the 2007 decision is void. For the above reasons, Appellants argue that this Court should reverse the decision of the South Kingstown Zoning Board granting final approval for the issuance of a special use permit.
In response, Appellees argue that there was no deficiency in notice and that any variation in the descriptions contained in the decisions of the Town Boards stems from the fact that changes were made to the assessor's plat over the ten year period in which this project was under review. Next, Appellees contend that the land development regulations applicable to subdivisions do not apply here because the SCCC development was governed by the more specific provisions of Article 9 of the South Kingstown Zoning Ordinance. Finally, Appellees contend that the 1999 Decision did not trigger the one year rule because the 1999 Decision did not include the type of final approval that is required before the one year rule would apply. *Page 7 
 A. The Efficacy of Notice
Without specifying how, Appellants argue that the notice afforded to the Town's residents in order to advertise the public hearings regarding SCCC is generally deficient. In addition, Appellants specifically allege that the inclusion of Plat 65, lot 8, in the zoning notices but not in the actual property covered by the final decision constituted faulty notice, which effectively stripped the Board of its jurisdiction to hear the application.
It is axiomatic that "[i]n zoning matters, just as in other legal proceedings, notice is a jurisdictional prerequisite." Carroll v. ZoningBd. of Review of City of Providence, 104 R.I. 676, 678, 248 A.2d 321,323 (1968). Indeed, the Rhode Island Supreme Court has consistently emphasized that the Zoning Enabling Act's notice requirements are nothing less than procedural due process requirements which must be complied with "and that the acquisition of jurisdiction to hear and determine such applications depends on strict compliance therewith."Mello v. Bd. of Rev. of City of Newport, 94 R.I. 43, 49, 177 A.2d 533,536 (1962). Accordingly, zoning boards must provide ". . . notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Carroll, 104 R.I. at 678,248 A.2d at 323 (citing Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 314 (1950)). More specifically, in the case of zoning relief, an interested party must be able to ascertain the nature of the relief sought and the location of the property. See section 45-24-42(b)(4) ("The notice shall also include the street address of the subject property. . . ."). Such notice ensures that interested parties will have the opportunity to have their opinions heard by a board of competent jurisdiction.
In assessing the sufficiency of notice, the fundamental inquiry of this Court is whether, in light of the notice actually rendered, a potentially interested party would have been able to *Page 8 
identify the location of the property and the nature of the relief requested. Where the notice is such that it reasonably puts interested parties on notice, Courts will conclude that even notice which includes some errors is not so deficient as to strip the local board of jurisdiction to entertain the application. See Pascalides v. Zoning Bd.of Review of Cranston, 97 R.I. 367, 369, 197 A.2d 747, 751 (1964) (incorrect description of 1180 Narragansett Boulevard, lots 1912 and 3998, where the correct description was actually 1180 Narragansett Boulevard, lots 1912 and 3898, sufficient notice to confer jurisdiction); Carroll v. Zoning Bd. of Review of Providence,104 R.I. 676, 679, 248 A.2d 321, 323, (1968) (notice correctly describing the physical location of the property but falsely implying ownership of that property by one other than the actual owner sufficient notice to confer jurisdiction). In contrast, where the notice is unclear, resulting in a potential interested party's inability to accurately identify the property in question such that they may be misled to inaction, Rhode Island courts then conclude that the notice is inadequate and that the local board acted without jurisdiction. See Abbott v. Zoning Bd. ofReview of City of Warwick, 78 R.I. 84, 85, 79 A.2d 620, 622 (1951) (description of "lot 472, plat 350 at intersection of Warwick Ave. 
Oakland Beach Ave.," where the property "was not located at the above-mentioned intersection," inadequate notice to confer jurisdiction); Mello v. Board of Review of City of Newport, 94 R.I. 43,50, 177 A.2d 533, 536 (1962) (description of "lot 52 of assessor's plat 9," where property was located on lots 52 and 165 of assessor's plat 9, inadequate to confer jurisdiction); Paquette v. Zoning Bd. of Review ofWest Warwick, 118 R.I. 109, 112, 372 A.2d 973, 974 (1977) (description including correct street address but referencing lots 736 and 754, where the property was actually located on lots 736 and 574, inadequate notice to confer jurisdiction). *Page 9 
Here, the challenged notice reads, in relevant part, that there will be a public hearing "for determination of a final layout plan and location of the individual units on the site for a mobile home park and golf course in an R40A Zone as required by said Zoning Board on March 22, 1999 in Item D (7) of their decision. Premises located at 841 Gravelly Hill Road, South Kingstown, RI, Tax Assessor's Plat 65, Lots 2, 3, 4, 5, 8 and 13 and Plat 72-2, Lot 20." The Court finds that this description is sufficient to allow a potentially interested party to identify the location of the property and the nature of the requested relief.
As a starting point, in the case at bar the address is correctly identified in all versions of the notice. Moreover, a perusal of the Rhode Island Supreme Court's opinions in Abbott, Mello, andPaquette reveal that each of the insufficient forms of notice in those cases was in some way under-inclusive — either because a lot was misidentified or because a specific street address was not included.See Abbott, 79 A.2d at 622; Mello, 177 A.2d at 536; Paquette,372 A.2d at 974. In contrast to the notice at issue in those cases, Appellants here challenge notice that is arguably over-inclusive in that it includes a lot which, though initially considered part of the project, was eventually excluded from the process. Realistically, given the ten-year period over which the plan underwent extensive changes, it is not at all surprising that a portion of the property was eventually left out of the plan in favor of an alternative design. It is true that the Board could have amended its advertisements to conform to this reality; however, by using the description of all the land included in the original application, the Board actually increased the likelihood that interested parties would identify the application as being the same one presented to the Board in 1998 and thus avoid confusion about a possible different application. Indeed, over-inclusive notice is not nearly as troubling as under-inclusive notice because in the case of over-inclusiveness, parties without an actual interest in the outcome may be needlessly lured to a *Page 10 
public meeting, but no one with an actual interest will be lulled into inaction. Because the notice here should have apprised all interested parties of the location of the property and the nature of the requested relief, the Court concludes that there was no error in the notice which caused the Board to act in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted by statute or ordinance, or upon unlawful procedure.
 B. The Applicability of Subdivision Regulations
Next, Appellants challenge the Board's decision that wetlands need not be subtracted from the total land available for determining SCCC's density calculations. Appellants argue that the Board's decision finding that the subdivision density regulations did not apply to SCSG's application is in violation of statutory or ordinance provisions, in excess of Zoning Board authority, founded on unlawful procedure, affected by error of law, clearly erroneous in view of the whole record, arbitrary and capricious, and characterized by an abuse of discretion. Appellants so argue on the ground that the subdivision regulations applicable to land development projects require that wetlands be subtracted from the total land available for the purpose of calculating the allowable density of the project.
In response, the Zoning Board maintains that because SCSG applied for a special use permit requiring only development plan review but not Planning Board approval, the subdivision regulations and the density calculation requirements contained therein did not apply to the application, and the Board's decision was, therefore, correct.
Before directly addressing the question of whether the subdivision regulations apply to the SCCC application, the Court will briefly outline the statutory framework within which this question arises. Rhode Island General Laws 1956 §§ 45-23-25 et seq. comprise the "Rhode Island Land Development and Subdivision Review Enabling Act of 1992" ("Development *Page 11 
Review Act"). The Development Review Act empowers local planning boards to enact binding subdivision regulations which apply, inter alia, "[i]n all cases of land development projects, as provided for in § 45-24-47 of the Zoning Enabling Act of 1991, where a municipality has allowed for the land development projects in its local zoning ordinance" and also "[i]n all cases of development plan review, as provided for in § 45-24-49 of the Zoning Enabling Act of 1991, where a municipality has established, within their zoning ordinance, the procedures for planning board review of applications." Section 45-23-27(2), (3).
The Zoning Enabling Act authorizes municipalities to adopt ordinance provisions regarding land development projects in light of the special circumstances that may necessitate coordinated planning and zoning review processes. Section 45-24-47 of the Zoning Enabling Act, entitled "Special provisions — Land development projects," governs these projects and provides in relevant part:
 (a) A zoning ordinance may provide for land development projects which are projects in which one or more lots, tracts, or parcels of land are to be developed or redeveloped as a coordinated site for a complex of uses, units, or structures, including, but not limited to, planned development and/or cluster development for residential, commercial, institutional, industrial, recreational, open space, and/or mixed uses as may be provided for in the zoning ordinance.
 (b) A zoning ordinance adopted pursuant to this chapter which permits or requires the creation of land development projects in one or more zoning districts shall require that any land development project is referred to the city or town planning board or commission for approval . . . No land development project shall be initiated until a plan of the project has been submitted to the planning board or commission and approval has been granted by the planning board or commission. . . . (emphasis added).
The Town has adopted an ordinance provision as authorized by § 45-24-47 of the Zoning Enabling Act. Ordinance § 14-1 provides that "the Planning Board is hereby empowered and authorized to adopt, modify, and amend regulations and rules governing subdivision of land and *Page 12 
land development projects within the Town of South Kingstown, and to control subdivision of land and land development projects pursuant to those regulations and rules."
Pursuant to the authority provided by § 45-24-47 and Ordinance § 14-1, the Planning Board adopted the Town of South Kingstown Subdivision and Land Development Regulations ("subdivision regulations"). Section III(A) of the subdivision regulations, entitled "General Requirements," provides that "all subdivisions submitted for approval," must comply with certain requirements. Section III(A) also directs that the Board must make certain findings before approval may issue for "any subdivision or land development project"; however, this directive applies only "if Planning Board approval is required. . . ."See section III(A). Section III(C)(1) goes on to provide that "when calculating the number of residential building lots or units permitted on any parcel, land included in all of the following categories shall be considered unsuitable for development and shall be deducted from the minimum building acreage of the parcel." The list that follows this provision specifies a number of land types which are to be excluded, including fresh water and coastal "wetlands" and "[l]and within any publicly or privately held easement on which above-ground utilities, including but not limited to electrical transmission lines, are constructed." Id. at § III(C)(1)(a), (b), and (d). Section III(C)(2) further specifies that "[l]and described in Subsection 1(a), 1(b), 1(c), and 1(d), above, may be included as part of any lot in any subdivision or land development project; provided, however, that land unsuitable for development shall not be counted toward the minimum lot size required in Section 230 of the zoning ordinance."
Although Appellants argue that Section III(C)(2) governs the SCCC application, Section III(A) forecloses that possibility by specifically indicating that "[t]he requirements listed below shall be applicable to all subdivisions submitted for approval. . . ." (Emphasis added.) Article II *Page 13 
of the regulations provides that a subdivision is "[t]he division or re-division of a lot, tract, or parcel of land into two or more lots, tracts, or parcels. Any adjustment to existing lot lines of a recorded lot by any means shall be considered a subdivision. All re-subdivision activity shall be considered a subdivision. The division of property for purposes of financing constitutes a subdivision." SCSG does not seek to divide its property into multiple lots, tracts, or parcels, but only seeks to lease portions of an undivided parcel of property. Therefore, SCCC is not a subdivision. Furthermore, SCCC does not require Planning Board approval. Instead, as will be more fully described below, SCCC is a special use which requires only advisory plan review by the Planning Board. Accordingly, the requirement of subdivision regulation § III(C) that wetlands be excluded from the density calculation does not apply here.
In contrast to the land development projects authorized under § 45-24-47, the Zoning Enabling Act in § 45-24-49 also authorizes municipalities to require development plan review for certain other land use projects. Section 45-24-49 provides:
 Special provisions — Development plan review. — (a) A zoning ordinance may permit development plan review of applications for uses requiring a special-use permit, a variance, a zoning ordinance amendment, and/or a zoning map change. The review is conducted by the planning board or commission and is advisory to the permitting authority. (Emphasis added).
The fundamental purpose of plan review is to allow the Zoning Board to enjoy the benefit of the Planning Board's expertise regarding the comprehensive plan when deciding on applications for "uses requiring a special-use permit, a variance, a zoning ordinance amendment, and/or a zoning map change" that is, for decisions that implicate and impact upon the comprehensive plan. Section 45-24-49. Unlike the Planning Board approval required for a land development project under § 45-24-47, the Planning Board recommendation that results from plan reviews under § 45-24-49 is only advisory, thereby ensuring that the Planning Board has a voice but not a say. *Page 14 
At the time SCSG submitted its special use permit application to create SCCC, only plan review, and not Planning Board approval, was required for "Mobile and Manufactured home parks." At that time, Ordinance § 220.08.1 allowed for the creation of a "Mobile and Manufactured Home Park" in the R40A zone by special use permit. Applications for such a special use permit were to be ". . . made directly to the Zoning Board. . . ." Section 920. Additionally, § 333 of the Ordinance specified that "[d]evelopment plan review by the Planning Board is required for the following facilities and uses . . . [a]ny new Mobile and Manufactured Home Park (Use Code 08.1). . . ." The procedure and standards to be applied to the requisite development plan review are further specified in ordinance § 333, while the standards for the issuance of the special use permit are detailed in Article 9 of the Ordinance.[4]
Both § 333 and Article 9 illuminate in exhaustive detail the factors which the Planning Board must examine in rendering its advisory opinion. Prior to submitting a plan, applicants are required to meet with a member of the planning department staff in order to determine what documents and information the applicant is required to submit. Section 333(E). The standards for determining what documents and information much be submitted are set out in section 333(C), which provides for the required contents of a detailed development plan.[5] In addition to *Page 15 
the list of required content, § 333(C) grants the Planning Board broad authority to "waive or modify any information or site plan requirement(s) it judges to be unnecessary to the review of the application." Once a plan is submitted, § 333(D) requires that "[t]he Board's review shall be based on the specific and objective guidelines or standards which are set forth in this Zoning Ordinance and by the policies provided in the Comprehensive Community Plan." Section 333(D) also enables the Planning Board to require improvements and revisions in the development plan relating to various aspects of the plan.[6] *Page 16 
Like § III of the subdivision regulations does in cases of land development projects, Article 9 lays out a list of detailed performance specifications relating to the density and placement of structures within the park. Under § 941, unit sites are required to be at least 6,000 square feet in area, 50 feet wide, and 120 feet deep, and to have 30 feet of separation from other structures[7] and a setback of at least 15 feet. Section 940 provides a detailed list of standards applicable to the park as a whole including minimum areas, buffering requirements along the exterior lot lines, provision of open space, and access requirements. The Ordinance also includes requirements pertaining to the width, grading, and length of internal streets, and as to off-street parking. Id. at § 942. Despite all this detail, notably absent from the exhaustive provisions of § 333 and Article 9 is any requirement that wetlands be subtracted when calculating permissible density.
Here, as required by the South Kingstown Ordinance, SCCC was proposed as a special use permit for a single lot upon which residents may rent spots to house their manufactured or mobile homes. Therefore, the Board specifically found in its 1999 decision that the "Zoning Ordinance density of one unit per forty thousand square feet still applies, as indicated by the very zoning designation `R40-A.' (1999 Decision at 3.) The Board further found that ". . . one unit per forty thousand square feet of gross lot area is permitted." Id. Clarifying its interpretation of the zoning Ordinance, the Board specifically required as a condition of its approval that the plans developed and submitted for plan review: *Page 17 
 . . . shall not exceed one unit per forty thousand square feet of gross lot area. Gross lot area shall be deemed to include all of that lot area allotted for the proposed mobile home park, without subtracting any square footage that will be taken up by wetlands and internal roadways. The square footage for any external roads which are traversed by the general public, even if a private road, shall be subtracted from the total. Id. at 4.
The Board thereby expressly rejected the density calculation required by the subdivision regulations.
The Board's decision to reject the density calculation required by the subdivision regulations is correct because the subdivision regulations only apply to "subdivisions submitted for approval" and "any subdivision or land development project, (if Planning Board approval is required)."See section III(A). Here, SCCC is not a subdivision or land development project requiring Planning Board approval, but instead is a proposed mobile or manufactured home park requiring only plan review. Therefore, the subdivision regulations clearly and unambiguously do not apply to SCCC. Furthermore, this Court must construe statutes to effectuate the intent of the legislature and must not construe statutes in a manner so as to produce an absurd result. See Tidewater Realty, LLC v. State,942 A.2d 986 (R.I. 2008). Given the detailed specifications included in the zoning Ordinance, it would surely be absurd to substitute the carefully established requirements of Article 9 and § 333 of the Ordinance, which apply to this project, with the general principles established in the subdivision regulations.
Finally, it is instructive to note that, if it had so chosen, the Town of South Kingstown could have regulated projects like SCCC under the Zoning Enabling Act's special provisions for land development projects.[8] Though this option was available to the Town at the time SCSG *Page 18 
filed its application, the Town chose instead to permit developments like SCCC to proceed without the burden and expense of demonstrating compliance with the subdivision regulations and obtaining planning approval. To now find that the subdivision regulations are applicable in the development plan review context would be to undo the Town's reasoned legislative judgment.
Thus, because the application for SCCC was filed in 1998 not as an application for a land development project but rather as an application for a single special use permit which required only an advisory recommendation by the Planning Board based on the detailed and specific requirements contained in the zoning Ordinance, because Article III of the subdivision regulations only applies to subdivisions and land development projects — situations where planning approval is required, and because the Town could have easily required that applicants for projects like SCCC receive planning approval but chose not to so require, this Court concludes that the Zoning Board's decision was correct. The standards contained in the subdivision regulations § III(C)(1) requiring the exclusion of wetlands from the density calculations are inapplicable to the SCCC project. Therefore, the Zoning Board's decision was not made in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted to the Zoning Board of Review by statute or ordinance, made upon unlawful procedure, or affected by other error of law, such that it prejudices substantial rights of the Appellants.
 C. The Finality of the Board's Decision
Appellants contend that the 1999 decision of the Zoning Board constituted a final approval, albeit a conditional one, and that in such a case extensions are available only for cause *Page 19 
when the applicant files a timely request for an extension. Because no request for extension was ever made in this case, Appellants contend that the absolute latest date a building permit could have been issued is April 14, 2005, or one year after the Presiding Justice's dismissal for lack of prosecution. In support of their position, Appellants argue that a failure to apply the one year rule in this situation would allow applicants to keep project proposals open at their whim without repercussion. Appellants also point out that application of the one year provision is desirable in that it prevents memories from fading allowing for a more streamlined review process. Additionally, Appellants point to SCSG's Washington County Superior Court appeal in WC 1999-0148 as evidence that Appellee SCSG believed that a final approval had been issued in 1999.
In response, Appellees argue that no special use permit was actually approved until the final decision of the Zoning Board in 2007. Because no development plans had even been drawn up at the time of the 1999 Decision, [9] Appellees point out that accepting the Appellants' position that the 1999 Decision was a final approval would mean that the approval would have expired before the Zoning Board would have had the opportunity to pass on a specific development plan for the SCCC property. Also, because the entire purpose of going through a phased approval process was to prevent the applicant from wasting resources developing, and the Town from wasting resources reviewing, specific site plans with unit counts far in excess or below the number that would ultimately receive approval from the Zoning Board, Appellees argue that a finding of conditional approval here would defeat the entire purpose of the agreed upon phased *Page 20 
review. Furthermore, Appellees argue that the 1999 Decision of the Zoning Board specifically notes that it was not an approval of a special use permit which would allow for any construction to commence or building permit to issue. Rather, that the Board retained jurisdiction to issue such a permit after the advisory review process ran its course. Thus, adopting Appellants' position would mean that the approval would have expired before a building permit could ever have issued — an absurd result. Because this Court should avoid construing statutes in such a way as to create irrational results, Appellees argue that the Court should reject Appellants' contention that the Ordinance's one year rule was applicable to the 1999 Decision of the Zoning Board.
As permitted by State law, South Kingstown attaches a one year sunset provision to all approved special use permits. Section 45-24-44(d) provides, "[i]f an application for development under the provisions of this section is approved, reasonable time limits shall be set within which development of the property must begin and within which development must be substantially completed." Based on this language in the Enabling Act, § 510 of the Zoning Ordinance provides that "[a]pproval of an application for a special use permit . . . shall expire one (1) year from the date of granting by the Board unless the applicant exercises the permission granted or receives a building permit to do so and begins the construction and diligently pursues it until completed."
When interpreting an ordinance, courts employ the same rules of construction that apply when interpreting statutes. See Ruggiero v. Cityof Providence, 893 A.2d 235, 237 (R.I. 2006). "If the statute is clear and unambiguous, we must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning." Id. By its terms, before the Ordinance's one year rule applies, the Board must have issued an "approval." Neither the list of definitions contained *Page 21 
in § 45-22.2-4 (list of definitions used in Rhode Island Comprehensive Planning and Land Use Act § 45-22.2-1, et. seq., which apply to zoning decisions by operation of § 45-24-31) nor the list of definitions contained in § 45-24-31 (list of definitions used in the Rhode Island Zoning Enabling Act of 1991) nor the South Kingstown Ordinance itself provides an express definition of the term "approval." Thus, because the term is undefined and reasonably susceptible to different meanings, this Court must determine is what is meant by the term "approval" in § 510 of the ordinance.
Where terms are inadequately defined in a local zoning ordinance, it falls to the local board, in the first instance, to interpret its own zoning ordinance. Champagne v. Zoning Board of the Town ofSmithfield, 99 R.I. 283, 283, 207 A.2d 50 (1965); Denomme v. Mowry,557 A.2d 1229, 1229 (R.I. 1989). Certainly, it has been the consistent position of the Town through the entirety of the approval process that no final decision had been made and no approval would occur until such a time as the Zoning Board issued its final decision. See 1999 Zoning Board Decision (specifically noting in condition number seven that the layout plan "shall be submitted to the South Kingstown Planning Board for its review, for determination of the final layout plan and location of the individual units on the site to be submitted to the Zoning Board"); see also Memorandum from Special Legal Counsel Nancy E. Letendre to Director of Planning Vincent Murray of May, 17, 2006 ("It is my opinion that the one year vesting period for a special use permit does not commence until the decision of the Zoning Board is final . . . the March 1999 decision was not a final decision. . . ."); Planning Board Advisory Opinion, November 15, 2006 (noting that "this approval issubject to the applicant receiving final approval of a Special Use Permit from the South Kingstown Zoning Board of Review.") (emphasis added); 2007 Zoning Board Decision (specifying that the board "grants final approval of a Special Use Permit") *Page 22 
(emphasis in original). The Board's own interpretation, therefore, provides strong support for Appellees' position that no approval for purposes of § 510 occurred until the Board issued its final decision in 2007.
This Court is also duty-bound to interpret the words and phrases of zoning ordinances in context. See Nunes v. Town of Bristol,102 R.I. 729, 738-739, 232 A.2d 775, 780-781 (1967). In particular, where a meaning can be adopted ". . . which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage" that meaning is preferred. See Ruggiero, 893 A.2d at 237,238 (quoting Local 400, International Federation of Technical andProfessional Engineers v. Rhode Island State Labor Relations Board,747 A.2d 1002, 1005 (R.I. 2000) (other internal citations omitted). Furthermore, in construing ordinances, this Court must "not construe a statute to reach an absurd result." Jeff Anthony Properties v. ZoningBoard of Review of the Town of North Providence, 853 A.2d 1226, 1230
(R.I. 2004).
The normal effect of a zoning approval is to clear the way for issuance of a building permit. Here, by the plain language of the Ordinance, ". . . [a]pproval of an application for a special use permit, unless such permit shall have been conditionally granted . . . shall expire one (1) year from the date of granting . . . unless the applicant exercises the permission granted or receives a building permit to do so and begins the construction and diligently pursues it until completed." (Ordinance § 510.) Importantly, before any zoning permission can be exercised and construction activity started, the owner must first obtain a building permit. See Ordinance § 602(A) ("No building or other structure shall hereafter be erected, enlarged, relocated, demolished, or structurally altered until a permit authorizing the same shall have been issued by *Page 23 
the Building Official."). When considered in context then, it becomes apparent that the running of the one year rule is premised on the applicant's ability to obtain a valid building permit.
Here, it is quite clear that SCSG could not have obtained a building permit based on the 1999 Decision. Specifically, condition number seven provided that the SCCC proposal "shall still be subject to Development Plan Review by the South Kingstown Planning Board," and that "[t]he final layout plan for the mobile home park, at the reduced number of units, shall be submitted to the South Kingstown Planning Board for its review for determination of the final layout plan and location of the individual units on the site to be submitted to the Zoning Board." (1999 Decision at 5.) This language clearly and unambiguously indicates that when the application was before the Zoning Board in 1999, the specific siting of the internal features of the park and of the individual units remained undetermined. Accordingly, it would have been impossible for the Zoning Board to have made the requisite findings of fact and conclusions of law necessary to render a full and complete decision that would have enabled SCSG to obtain a building permit. See Hester v.Timothy, 108 R.I. 376, 386, 275 A.2d 637, 642 (1971) ("Until the locations are fixed, it is impossible for the Board to make definitive findings relative to the public convenience and welfare and the effect of the proposed use on the surrounding property."). Thus, if the Court were to accept Appellants' construction of the Ordinance, it would lead to the absurd result that the applicant's zoning permission expired before the applicant was even cleared by the same permitting authority to receive a building permit. Such an irrational result could not have been intended when the Town Council passed the one year rule into law. Thus, because the Ordinance premises application of the one year rule on an applicant's eligibility to receive a building permit, this Court concludes that the approval contemplated by Ordinance § 510 means Zoning Board approval that would allow for issuance *Page 24 
of a building permit. Therefore, this Court concludes that the 1999 Decision was not an approval within the meaning of the Ordinance such that it triggered the operation of the one year rule established by Ordinance § 510.
In the alternative, Appellants contend that the 1999 Decision constituted a conditional approval under Ordinance § 502(F). Enacted pursuant to § 45-24-57(1)(vii), which sets forth the powers and duties of zoning boards of review, § 502(F) provides that the Board shall have the power "[t]o provide for issuance of conditional zoning approvals where a proposed application would otherwise be approved except that one (1) or more state or federal agency approvals which are necessary are pending. A conditional zoning approval shall be revoked pursuant to the requirements of Section 503." Both Ordinance § 503 (outlining the procedure for issuance of a conditional zoning approval) and General Laws § 45-24-57(1)(vii) require that the Zoning Board attach a specific period of time within which the applicant is obligated to obtain the approvals from the other agencies before the conditional approval expires. Appellants argue that the Court should apply the generally applicable one year rule to SCSG's application because the 1999 Decision appears to grant conditional approval for SCCC and because the Board failed to attach a time limit to this apparent approval.
It is easy to see how, reading the plain face of the 1999 Decision, Appellants could have come to the conclusion that the Zoning Board issued a conditional approval at that time. Indeed, the first paragraph of the 1999 Decision indicates that "[a]t a meeting of the Zoning Board of Review held March 22, 1999, the Board granted the request for aspecial use permit to create a mobile home park and golf course. . . ." However, when the 1999 Decision is read against the backdrop of the Ordinance § 503, it becomes clear that no conditional approval occurred. *Page 25 
When the Board issued the 1999 Decision, plan review was still pending (as the Board recognized in condition number seven); therefore, the Board could not have issued a conditional approval. Plan review is a necessary pre-condition to approval — even conditional approval. Indeed, our Supreme Court has deemed it reversible error when Zoning Permission is issued without the advice of the Planning Board after plan review.See Town of Johnston, 723 A.2d at 278 (failure to obtain development plan review in permitting process justifies revocation of building permit, even after construction). This rule does not change for conditional approval, which is allowable only where a state orfederal agency action is pending, not a Planning Board action. (See Ordinance § 503(F).) Thus the Zoning Board could not have issued a conditional approval, but was required to retain jurisdiction until after the Planning Board issued its advisory opinion after conducting plan review. Indeed, the Board's failure to set a time limit for SCSG to secure approvals from other agencies indicates that the Board understood well that it was retaining jurisdiction over the application and not, in fact rendering a conditional approval. The Board's decision to retain jurisdiction also refutes Appellants' main policy argument. Because it is the Board and not the applicant which has held open the SCCC application, Appellants' fear that failure to apply the one year rule would allow applicants to hold open applications at their whim is unfounded. Overall, because plan review was still pending when the Board issued the 1999 Decision, this Court holds that the Board could not have granted and did not grant conditional approval for SCCC.
Finally, Appellants' assertion that SCSG's Washington County Superior Court appeal in WC-1999-0148 reflects a final, albeit conditional, decision of the Zoning Board is without merit. A mere assertion of jurisdiction by one party is far from a conferral upon or exercise of jurisdiction by this Court. The appeal in that case was dismissed for lack of prosecution. No *Page 26 
justice ever reached the merits or determined the extent to which this Court had jurisdiction to hear that controversy. Accordingly, the Court takes that appeal for what it was: an act of cautious lawyering, seeking to preserve any appellate rights that might have existed in case the client decided that the 1999 Decision was too onerous a restriction on its perceived development rights.
Therefore, because the Town is entitled to some deference on its interpretation of its own Ordinance and because Ordinance § 510, when read in context, conditions its application on the ability of the applicant to obtain a building permit, this Court concludes that the Zoning Board's 1999 Decision was not an approval that would trigger the application of the Ordinance § 510. This Court further holds that the 1999 Decision was not a conditional approval and that nothing in the 1999 Decision preempted or eliminated the Board's ability to render a final decision in 2007. Accordingly, this Court concludes that the 2007 decision of the Zoning Board was not made in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted to the Zoning Board, or upon unlawful procedure, nor was it affected by other error of law.
 IV Conclusion
Given all of the foregoing, this Court affirms the decision of the Zoning Board granting the SCSG's application for a special use permit. The Court finds that the Zoning Board's decision was not made in violation of constitutional, statutory, or ordinance provisions, in excess of the authority granted to the Zoning Board, or upon unlawful procedure, nor was it affected by any other error of law. Furthermore, this Court is satisfied that the Zoning Board's decision was supported by substantial evidence and is, therefore, not clearly erroneous, arbitrary and *Page 27 
capricious, or an abuse of discretion. The decision did not prejudice Appellants' substantial rights.
Counsel for Appellees shall submit an appropriate order for entry in accordance with this Decision within ten days.
[1] Mr. O'Neill initially filed this appeal. His appeal was joined by Appellants Sandra A. Borsa, and Karen A. Tremblay. Because he is not an abutter, Mr. O'Neill was dismissed from the appeal for lack of standing. The remaining Appellants are abutters of the SCCC site.
[2] Article 9 establishes the performance standards for a manufactured/mobile home park.
[3] The appeal of the 1999 Decision was South County Country Club v.South Kingstown Zoning Board, WC 1999-0148. On April 15, 2004, the Presiding Justice dismissed the appeal for lack of prosecution.
[4] As a part of the changes that became effective in 1999, the language from § 333 of the zoning ordinance was transferred from the zoning ordinances and placed into the subdivision regulations. The contents of the previous zoning ordinance § 333 now reside (as amended) in Article IV, Section (F) of the subdivision regulations.
[5] Section 333(c) provides in pertinent part:
 Development Plan Contents — Every development plan submitted in accordance with this section shall contain the following information:
 1. Name address of the owners of the property and applicant and preparer of the plans;
 2. Date of Plan preparation including any revision date(s), graphic scale, north arrow and number of plan sheets. Scale of the drawing shall be 1" = 40' or greater;
 3. Boundary lines of the property being developed;
 4. Names of property owners adjacent to and immediately across any adjacent street from the subject property. Approximate location and notation of the nature of adjacent buildings and land uses. Names of any adjacent public or private streets;
 5. Location and exterior dimensions of all buildings and structures with an indication of setbacks and/or distances to all property lines as necessary to indicate conformity to applicable provisions of the zoning ordinance;
 6. Location and dimension of off-street parking and loading areas, drive-ways, and pedestrian walkways;
 7. Location of existing and proposed utilities, including water, sewer, gas, electric or other communications, refuse disposal facilities and provisions for stormwater (sic) drainage;
 8. Existing and proposed contours with a minimum 5-foot contour interval;
 9. Stamp of a registered professional engineer or land surveyor; and,
 10. Landscaping plans (when required) shall also show planning and landscaping elements . . .
 11. Development plans for mobile and manufactured home parks shall also include plan and profiles of all proposed streets drawn at a scale of 1"=40' horizontal and 1"=4' vertical. (sic)
 12. The Planning Board may also require the submission of a proposed drainage plan. . . .
[6] More specifically, § 333(D) provides that:
 The following revisions to the development plan, and improvements may be required by the Planning Board:
 1. Modifications to the location of any off-street parking area or loading area; building or structure upon the lot;
 2. Provisions for pedestrian, bicycle and/or vehicular circulation upon the lot and to/from adjacent properties or public or private streets;
 3. Provisions for the location and/or screening of trash disposal facilities, dumpsters, etc.;
 4. Provisions for sidewalks and easements for future sidewalks to connect buildings or facilities within the site and to adjacent sites;
 5. Provisions for fire lanes and/or access for emergency vehicles;
 6. Provisions for adequate stormwater (sic) drainage systems;
 7. Provisions for temporary soil erosion and sediment control measures;
 8. Provisions for landscaping, screening and buffering;
 9. Provisions for signage;
 10. Provisions for safe and adequate street access, including location and size of driveways and curb cuts;
 11. Provisions for preserving or enhancing unique natural and/or historic features, including stone walls; and,
 12. Provisions for exterior lighting.
[7] There is an exception to this requirement where homes are staggered end-to-end, in which case 20 feet of clearance is permitted. (Ordinance § 941(C).)
[8] Seeking to secure the benefits of coordinated planning and zoning approvals for South Kingstown, in 1999 the Town undertook a massive reorganization of its zoning ordinance and sub-division regulations. The R40A zone was abolished and the Mobile and Manufactured Home Parks use was re-categorized. In light of these revisions, were the application for SCCC filed today, it would proceed as a land development project requiring Planning Board review and approval.
[9] Though no party has raised the issue on appeal, because of the peculiar procedure employed in approving the application, the Court feels that it is important to note that under § 45-24-44(a) an application must be "substantially complete" in order to vest rights under an amended zoning ordinance. While it seems quite clear that, at the time of the application, a significant amount of work remained to be done in the development process the application was as complete as it could have been prior to engaging the Town's participation in the development review process. Thus, because the application, as submitted in 1998 was ready for an initial consideration and determination by the Zoning Board, this Court finds that the application for SCCC was "substantially complete" when submitted.